IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

```
CLAUDIE ALLEN,                         :
                                       :
    Plaintiff,                         :
                                       :
vs.                                    :
                                       :     CIVIL ACTION 14-0364-M
CAROLYN W. COLVIN,                     :
Social Security Commissioner,          :
                                       :
    Defendant.                         :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20). Oral argument was waived in this action (Doc. 19). After considering the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Allen was twenty-six years old, had completed several years of college (Tr. 37), and had previous work experience as a cashier, cook, grocery worker, and nurse assistant (Tr. 48).  Plaintiff alleges disability due to Status post tibia fracture with ORIF, major depression, headaches, morbid obesity, hypertension, and gastroesophageal reflux disease (Doc. 13).

The Plaintiff applied for disability benefits and SSI on September 27, 2010, alleging an onset date of September 22, 2010 (Tr. 117-26; *see also* Tr. 12).  An Administrative Law Judge (ALJ) denied benefits, determining that although Allen could not perform her previous work, there were sedentary jobs that she could perform (Tr. 12-28).  Plaintiff requested review of the hearing decision (Tr. 7), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Allen alleges

2

that:   (1) The residual functional capacity (hereinafter *RFC*) is not supported by the evidence; (2) the ALJ did not properly consider the conclusions of the treating physician; (3) the ALJ did not properly consider her combination of impairments; and (4) Plaintiff cannot perform the jobs to which the vocational expert (hereinafter *VE*) testified (Doc. 14).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant evidence of record will now be summarized.

On Allen's alleged disability onset date (Tr. 117), September 22, 2010, she went to the emergency room at the Bryan W. Whitfield Memorial Hospital and was admitted for two nights for a fractured right tibia and fibula, requiring an open reduction and intramedullary rod fixation by Orthopaedic Dr. A.L. Tropeano; she was discharged in stable condition, independent with a walker (Tr. 218-27, 341-63).  Two examinations later, on October 11, the Orthopaedic encouraged partial (25%) weight-bearing on her leg and prescribed physical therapy (hereinafter *PT*) (Tr. 216-17).  A PT note on October 15 noted good home compliance with the exercise program, though Allen herself admitted otherwise four days later (Tr. 329, 337-40).  Also on October 15, Evans complained of chest pain and was diagnosed with gastroesophageal reflux disease (hereinafter *GERD*) (Tr. 330-33).

On October 15, 2010, Plaintiff was seen by a CRNP at Fitz-

3

Gerald & Perret Clinic for neck pain remaining from her recent fall; Toradol[1] was prescribed (Tr. 229-32; see generally Tr. 229-326). On November 10, 2010, Dr. M.J. Fitz-Gerald examined Allen who wondered about a tooth extraction under her medication regimen (Tr. 385-87). She was morbidly obese and could not be weighed because of her size; she was in no apparent distress. Plaintiff had good range of motion (hereinafter *ROM*) in her extremities. Fitz-Gerald put her on a diet and prescribed an appetite suppressant.

On November 19, 2010, Surgeon Tropeano found her doing "fantastic;" though Allen's injuries were not one hundred percent resolved, she could return to full weight-bearing on her leg, though she should be careful, especially with walking and stairs (Tr. 390). Using a walker was alright. On December 27, Plaintiff reported lessening pain and was encouraged to increase her ROM and exercise; Naprosyn[2] was prescribed (Tr. 389).

On February 9, 2011, Dr. Tropeano found tenderness in the right leg at the fractures; x-rays demonstrated progress but she was not one hundred percent healed as it appeared she had a lateral meniscal tear (Tr. 414-18). There was decreased ROM.

---

[1] *Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[2] *Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

4

From March 8, 2011 through January 26, 2012, Plaintiff was seen at West Alabama Mental Health Center on a monthly basis for depression and feelings of helplessness (Tr. 419-46).  There were no problems with appearance, attitude, behavior, thought process, or motor activity though there was a minor problem with memory; an initial diagnosis was major depression without psychotic features (Tr. 440-46).  On March 22, 2011, Allen reported feeling less stressed; her affect was normal and motor activity was calm (Tr. 435).  On July 18, Plaintiff reported her depression as three on a ten-point scale (Tr. 430).  On October 17, her therapist noted moderate progress (Tr. 427).  November and December 2011 records indicate Allen reporting depression and overwhelming sadness, problems sleeping, and crying spells (Tr. 425-26).  On January 26, 2012, progress was considered moderate; Plaintiff was encouraged to increase her physical activity while being prescribed Lunesta and Zoloft[3] (Tr. 420-24).  Allen reported medium compliance (Tr. 420).

On December 26, 2011, Plaintiff went to the Fitz-Gerald & Perret Clinic, claiming that her right leg had been going out on her, causing her to fall; she was given a Decadron[4] shot and encouraged to lose weight (Tr. 462-66).  On January 25, 2012,

---

[3] *Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).

[4] *Decadron* is used for, among other things, the treatment of rheumatic disorders.  *Physician's Desk Reference* 1635-38 (52nd ed. 1998).

5

Allen was seen by a CRNP for a headache; weight was recorded at 428 pounds with a body mass index at 67 (Tr. 458-61).  A week later, Plaintiff reported that the Topomax[5] had helped with the headaches (Tr. 454-57).  Allen limped with a cane; there was normal crepitus to the right knee.  Plaintiff saw the CRNP again on February 21, 2012 for follow-up on her headaches as well as new complaints of a cough and sore throat; no pain was noted on examination (Tr. 449-53).  Findings of the musculoskeletal system were normal overall; the cervical spine had full ROM.  Allen had abnormal gait with a cane; the assessment was morbid obesity and osteoarthritis for which she was prescribed Maxalt-MLT.  Dr. Fitz-Gerald, completed a form indicating that Allen could not perform sustained work eight hours a day, five days weekly and could not maintain attention, concentration, or pace for two-hour periods (Tr. 448).

On January 5, 2012, Dr. Kevin Thompson, Orthopaedic, examined Allen for complaints of right knee pain (Tr. 476-80).  On exam, the Doctor noted normal, non-antalgic heel to toe gait with right knee tenderness; though there was subjective instability, there was no demonstrable clinical instability.  An MRI was normal, with a mild irregularity of the medical meniscus, though there was no tear; on January 26, Thompson gave

---

[5]*Topomax* is used in the treatment of migraine headaches. *Physician's Desk Reference* 2378-79 (62nd ed. 2008).

her a cortisone injection (Tr. 470-75).

On August 21, 2012, Neurophysiologist A.B. Todorov examined Allen at the request of the Social Security Administration (Tr. 482-92).  The Doctor noted no impairments of the cervical or lumbar spine and that the extremities showed good tonicity, trophicity, and strength.  There was very minor limitation in ROM in the right knee; though the knee would hyperextend, there were no sensory or reflex abnormalities.  Allen walked with difficulty, having very poor balance because of her morbid obesity.  Squatting and rising were difficult because of her weight and leg pain.  Todorov found no restrictions in handling objects.  The Neurophysiologist completed a physical capacities evaluation in which he indicated that Allen was capable of lifting up to ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally and able to carry ten pounds frequently and twenty pounds occasionally (Tr. 486-91). Plaintiff could sit for four, stand for one, or walk for one hour at a time and sit eight, stand two, and walk one hour during an eight-hour day.  Todorov indicated that a cane was a medical necessity because of her morbid obesity, but that she could use a cane and still carry small objects (Tr. 487, 492). There were no restrictions in either hand for reaching, handling, fingering, feeling, or pushing and pulling; while she could use her left foot frequently, her right foot could only

7

occasionally operate foot controls.  On occasion, Allen could climb stairs and ramps, balance, and stoop, but she could never climb ladders or scaffolds, kneel, crouch, or crawl.  Plaintiff could be exposed to humidity and wetness frequently but to unprotected heights and moving mechanical parts only occasionally.  The Doctor found that Allen could never walk even a block or climb a few steps with the use of a single handrail at a reasonable pace.

The ALJ, in determining non-disability, found that Allen had the following RFC:

> To perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that the claimant requires a sit/stand option allowing this individual to alternate between sitting and standing at fifteen to thirty minute intervals throughout the work day.  She can never climb ramps, stairs, ladders, ropes or scaffolds.  The claimant can never crawl.  She can occasionally balance, stoop, kneel and crouch.  Ms. Allen is limited to jobs that can be performed while carrying an assistive device.  She must avoid concentrated exposure to extreme temperatures as irritants such as fumes, odors, dust, gases and poorly ventilated areas.  The claimant must avoid all exposure to work around hazardous machinery and unprotected heights.  Work is limited to simple, repetitive routine tasks of one to three steps in a low stress job defined as having only occasional decision-making required and only occasional changes in the work setting.

(Tr. 16).  The Court notes that the ALJ found that Plaintiff's

8

testimony, as well as that of her father, was not credible as to the extent and limitation of her pain and abilities (Tr. 24-25); Allen has not sought to challenge these findings in this action (*see* Doc. 14).  This concludes the Court's summary of the relevant record evidence.

In bringing this action, Plaintiff first asserts that the RFC found by the ALJ is not supported by the evidence (Doc. 14, pp. 3-6).  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2014); that decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

The Court notes that Allen's second claim, subsumed within the first, is that the ALJ did not properly consider the conclusions of her treating physician, Dr. Fitz-Gerald (Doc. 14, pp. 4-5).  It should be noted, though, that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[6] *see also* 20 C.F.R. § 404.1527.

In his determination, the ALJ faithfully summarized the

---

[6]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

treatment records of the Fitz-Gerald & Perret Clinic (Tr. 19, 20, 21, 22, 23), but assigned little weight to the Physician's Medical Source Statement finding that Plaintiff was incapable of working a forty-hour workweek or maintaining concentration, persistence, and pace for two-hour periods (Tr. 26; *cf.* Tr. 448). The ALJ's reasons for rejecting those conclusions were that they were not supported by any of the evidence of record, much less his own treatment records; the ALJ specifically pointed out that Fitz-Gerald never placed any restrictions on Allen's activities or even reported any limitation of abilities (Tr. 26). The ALJ also, however, credited the report of "Orthopaedic Spine and Center" (Tr. 26). Though the ALJ incorrectly identified University Orthopaedic Clinic and Spine Center (*see* Tr. 470-80), the records there and from the Orthopaedic Surgeon Tropeano described Allen's injury as all-but-healed. The Court further notes that the consultative examination by the Neurophysiologist Todorov supports the ALJ's finding that Fitz-Gerald's conclusions are without foundation, even though Allen has pointed out that the ALJ did not embrace all of his conclusions (Doc. 14, pp. 5-6; *cf.* Tr. 26).

Plaintiff's third claim, that the ALJ did not properly consider the combination of impairments, also falls under the RFC umbrella claim (Doc. 14, p. 4 n.1). It is true that "the Secretary shall consider the combined effect of all of the

10

individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)C). The Eleventh Circuit Court of Appeals has noted this instruction and further found that "[i]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984); *see also Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

In the ALJ's findings, he lists Allen's impairments and concludes by saying that he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1" (Tr. 15). This language has been upheld by the Eleventh Circuit Court of Appeals as sufficient consideration of the effects of the combinations of a claimant's impairments. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4"). This claim is of no merit.

Allen has raised various arguments as to why the RFC, as determined by the ALJ, is not supported by the evidence.  The Court finds no merit in any of them, noting that Plaintiff bears the responsibility of providing the evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

Allen's final claim is that she cannot perform the jobs to which the VE testified (Doc. 14. pp. 6-7).  Plaintiff has pointed to four different Social Security Rulings (hereinafter *SSR*'s), suggesting that they are at odds with the VE's testimony (Doc. 14, pp. 6-7).

SSR 83-12, titled "Capability to Do Other Work-The Medical-Vocational Rules as a Framework," states the following:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. . . . However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  **Unskilled types of jobs are particularly structured so that a person**

12

> **cannot ordinarily sit or stand at will**. In cases of unusual limitation of ability to sit or stand, a [Vocational Specialist (hereinafter *VS*)] should be consulted to clarify the implications for the occupational base.

SSR 83-12, *4 (emphasis added).

SSR 83-14, titled "Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional And NonExertional Impairments," notes that "section 201.00(h) of Appendix 2 calls attention to the fact that **bilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations**." SSR 83-14, * 2 (emphasis added). Later the Ruling again emphasizes that "[t]he bulk of unskilled sedentary jobs requires bilateral manual dexterity." SSR 83-14, *4. And again, the services of a VS are indicated.

SSR 85-15, titled "Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments," states that the "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." SSR 84-15, *7.

And finally, SSR 96-9p, titled "Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work," discusses two

13

limitations relevant to Allen.  The first, the need to "alternate sitting and standing", states:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  **The extent of the erosion will depend on the** facts in the case record, such as the **frequency of the need to alternate sitting and standing and the length of time needed to stand.**  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p *7 (emphasis added).  The second, the need for a "medically required hand-held assistive device," states as follows:

> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary

14

> unskilled occupations with the other hand.[7]
> For example, an individual who must use a
> hand-held assistive device to aid in walking
> or standing because of an impairment that
> affects one lower extremity (e.g., an
> unstable knee), or to reduce pain when
> walking, who is limited to sedentary work
> because of the impairment affecting the
> lower extremity, and who has no other
> functional limitations or restrictions may
> still have the ability to make an adjustment
> to sedentary work that exists in significant
> numbers.  On the other hand, **the
> occupational base for an individual who must
> use such a device for balance because of
> significant involvement of both lower
> extremities (e.g., because of a neurological
> impairment) may be significantly eroded.**

SSR 96-9p *7 (emphasis added).

The ALJ's RFC for Allen was that she could perform sedentary work[8] requiring a sit/stand option to alternate at thirty-minute intervals throughout the work day (Tr. 16).  She was further "limited to jobs that can be performed while carrying an assistive device" (Tr. 16).  In his hypothetical to the VE, the ALJ queried an individual who could perform sedentary work (Tr. 52), with "a sit/stand option that allows

---

[7] "FN7. Bilateral manual dexterity is needed when sitting but is not generally necessary when performing the standing and walking requirements of sedentary work."

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 414.1567(a).

them to alternate between sitting and standing positions at 15 to 30-minutes intervals . . . simply at the discretion of the worker" (Tr. 51), but was "limited to jobs that can be performed while using a handheld assistive device, but [] the requisite lifting requirements [] of the exertional limit could be still accomplished while ambulating with that handheld assistive device" (Tr. 53).

Crediting the VE's testimony, the ALJ found that Plaintiff was capable of performing the jobs "nut sorter (DOT 521.687-086), addresser (DOT 209.587-010) and call out operator (DOT 237.367-014)," acknowledging his specific query of "the hand held assistive device with the addresser job" (Tr. 27-28).

*Nut sorter* is defined as follows:

> TITLE(s): **NUT SORTER (can. & preserv.)**
> **alternate titles: hull sorter; nut picker;**
> **nut sifter;**
>
> picking-belt operator[.]  Removes defective nuts and foreign matter from bulk nut meats: Observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks.  Places defective nuts and foreign matter into containers.  May be designated according to kind of nut meat sorted as Almond Sorter (can. & preserv.); Peanut Sorter (can. & preserv.).
> **GOE: 06.03.02 STRENGTH: S GED: R1 M1 L1 SVP: 2 DLU: 77**

DOT 521.687-086.[9]

*Addresser* is defined as follows:

> TITLE(s): **ADDRESSER (clerical) alternate titles: addressing clerk; envelope addresser**
>
> Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing.  May sort mail.
> **GOE: 07.07.02 STRENGTH: S GED: R2 M1 L2 SVP: 2 DLU: 77**

DOT 209.587-010.

*Call out operator* is defined as follows:

> TITLE(s): **CALL-OUT OPERATOR (business ser.; retail trade)**
>
> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers' requests, using telephone.  Copies information onto form to update information for credit record on file, or for computer input.  Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.
> **GOE: 07.05.03 STRENGTH: S GED: R3 M2 L3 SVP: 2 DLU: 77**

DOT 237.367-014.

After reading the descriptions of the three different sedentary jobs, the Court notes that none reference sitting

---

[9]*See* http://www.occupationalinfo.org/52/   The Court would further note that an explanation for all terms within the *Dictionary of Occupational Titles* can be found in Appendix C.

17

versus standing or bilateral manual dexterity.  With *addresser* and *call out operator*, Plaintiff would not be able to type while standing, but if she could write with one hand while balancing with the other, she should be able to do both jobs.  While one would think that sorting nuts would be more effectively and efficiently accomplished with two hands rather than one (since half of the work day, according to the ALJ, Allen will need to stand, using a cane for balance), maybe that is not the case.

Nevertheless, the Court has reviewed the Social Security Rulings suggested by Allen and noted the language relevant to the facts presented here and cannot say that the ALJ's decision is not supported by substantial evidence.  The Rulings state that having to alternate between sitting and standing, and using a handheld device, would limit the number of jobs, bit they did not say that jobs were precluded.  Likewise, each Ruling suggests, though not reported herein, that the testimony of a VS should be obtained if there are questions.  In this action, the ALJ had a VE testify; that testimony was that Plaintiff could perform the jobs of nut sorter, addresser, and call out operator. Allen's claim is without merit.

Plaintiff has raised four different claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a

18

conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 4th day of March, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE